UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TONY LIONEL LOVE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:18-cv-03548-JRS-TAB |
| ) | |
| MATHEW PRESTEL Sgt., ) | |
| ) | |
| Defendant. ) | |

**ORDER AWARDING DAMAGES
AND DIRECTING ENTRY OF FINAL JUDGMENT**

On May 5, 2021, this action came before the Court for an evidentiary hearing to determine the amount of damages to be awarded to plaintiff Tony Lionel Love against defendant Mathew Prestel. All parties were provided advance written notice of the hearing. Mr. Love appeared in person, *pro se*, by video link from the New Castle Correctional Facility. Mr. Prestel, who was an Indiana Department of Correction Correctional Sergeant at all times material to this action, did not appear. In this Order, the Court will refer to the defendant as Sgt. Prestel since that was his title during the incident with Mr. Love.

Partial summary judgment, on the issue of liability, was granted on June 15, 2020, in Mr. Love's favor and against Sgt. Prestel. Dkt. 67. The facts to establish liability, as found by the Court, were stated in the June 15, 2020, Order:

> On February 18, 2018, Plaintiff was an inmate at the Pendleton Correctional Facility. He was assaulted by Defendant Sgt. Matthew Prestel, a correctional officer. Plaintiff was standing in front of a medical evaluation cell in preparation for a medical visit. He was not restrained. Defendant, without provocation, pushed and then shoved Plaintiff down onto the bed while striking him. Defendant then climbed on top of Plaintiff, continuing to inflict strikes on his head and face. Defendant also used his elbow to inflict strikes on Plaintiff. Defendant then used his forearm and elbow to choke Plaintiff, causing him to not be able to [breathe]. When Plaintiff was able to tell Defendant that he could not breathe, Defendant

> replied, "Who gives a shit?" Plaintiff passed out. Correctional Officer Stanley witnessed the application of force, told Defendant to stop, and heard Plaintiff state he was having breathing problems.
>
> Defendant made a false report that accused Plaintiff of assaulting him and made no mention of Defendant striking or punching Plaintiff. Plaintiff was charged in a prison disciplinary case with assaulting an officer and placed in segregation. Following an IDOC Internal Affairs investigation, the disciplinary charge against Plaintiff was dropped and he was released from segregation. Defendant was terminated from his employment with the IDOC on March 5, 2018, for violating IDOC policies.
>
> Plaintiff suffered injuries from Defendant's assault. Swelling on his left jaw was visible during a nurse visit on March 2, 2018. Plaintiff also suffered scrapes, scratches, and abrasions, and experienced pain while trying to eat for several weeks after the incident.
>
> Other facts are set forth in the Internal Affairs report and its attached exhibits.

Dkt. 67 (record citations omitted).*

**Findings of Fact**

At the May 20, 2021, evidentiary hearing, Mr. Love testified to his injuries in substantial agreement with the above-quoted facts. A surveillance video of the assault was also reviewed by the Court, showing that Mr. Love did not physically provoke Sgt. Prestel, that Sgt. Prestel slammed Mr. Love onto a small bed, lay on top of him, and inflicted several blows to Mr. Love's head with his right arm. Dkt. 72-1. The video does not clearly reflect what Sgt. Prestel is doing with his left arm, but the body positions are consistent with Mr. Love's testimony that Sgt. Prestel choked him into a brief period of unconsciousness. *Id.*

Mr. Love testified that other than some lingering "little discomfort," the pain from his injuries lasted approximately six weeks.

---

* Due to a scrivener's error, these findings indicate that Mr. Love's nurse visit was on March 2, 2018. The actual date was March 9, 2018. Dkt. 58-1 at 22.

The Court finds that Mr. Love has proven by a preponderance of the evidence that he was battered by Sgt. Prestel, without provocation or legal justification, and suffered physical injuries to his head, face, and jaw, and pain from those injuries. The injuries have not caused disfigurement or disability.

Mr. Love added that, as best that he recalled, he lost his prison job due to his placement in segregation, losing a month's pay of no less than $25. Because this testimony was unopposed, the Court finds that it has been proven by a preponderance of the evidence.

Mr. Love incurred no medical expenses.

Mr. Love's testimony at the hearing was that he was placed in disciplinary segregation ("lockup") following the incident and remained there for several days, which he estimated at one month. A previous assertion by Mr. Love stated his time in segregation was two weeks. Dkt. 42 at 1. To calculate damages for Mr. Love's time spent in "lockup," the Court looks to the record to ascertain a more reliable length of the stay.

A Restrictive Status Housing Report, dkt. 42-1 at 2, reflects that Mr. Love entered segregation on February 19, 2018, due to the conduct report, dkt. 58-1 at 5, alleging a battery on Sgt. Prestel. Dkt. 42-1 at 2. The housing report indicates that Mr. Love would stay in restrictive housing through the completion of an investigation. Dkt. 42-1 at 2. A Report of Investigation reflects that the *report* was completed on March 1, 2018. Dkt. 58-1 at 2. A "Gate Closed" notice from the facility Warden to the "Control Center Supervisor," dated March 1, 2018, prohibits Sgt. Prestel from entering the facility due to him being suspended pending an investigation. Dkt. 58-1 at 18. This notice was followed by a second "Gate Closed" notice, dated March 5, 2018, due to Sgt. Prestel having been terminated. *Id.* at 19. A letter from the Warden to Sgt. Prestel

informing him of his termination is dated March 5, 2018. *Id.* at 19. Thus the Court finds that the investigation concluded on March 5, 2018, signaling the end to Mr. Love's time in "lockup."

This finding is also supported by the medical records showing that Mr. Love was seen for his jaw pain on March 9, 2018. *Id.* at 22. Mr. Love's testimony was that he was not permitted to see medical until he was released from lockup. The March 9, 2018, nurse visit was just four days after the probable release from lockup.

The Court finds by a preponderance of the evidence from Mr. Love's testimony and the record that Mr. Love spent fifteen days in restrictive housing due to Sgt. Prestel's false conduct report.

### Conclusions of Law – Monetary Damages

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). A prisoner does not need to offer objective evidence of his pain and suffering, and may instead rely on his own testimony to support an award of damages. *Hendrickson v. Cooper*, 589 F.3d 887, 893 (7th Cir. 2009) (citing *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005)). "'Punitive damages are appropriate when the defendant acted wantonly and willfully, or was motivated in his actions by ill will or a desire to injure.'" *Hendrickson*, 589 F.3d at 894 (quoting *Hagge v. Bauer*, 827 F.2d 101, 109–10 (7th Cir. 1987)).

In evaluating the monetary award for Sgt. Prestel's battery on Mr. Love causing injury and pain, the Court looks to other reported damage awards for guidance. In considering damages, the Seventh Circuit Court of Appeals has held that three factors guide its analysis: "whether (1) the

award is monstrously excessive; (2) there is no rational connection between the award and the evidence, indicating that it is merely a product of the jury's fevered imaginings or personal vendettas; and (3) whether the award is roughly comparable to awards made in similar cases." *Adams v. City of Chi.*, 798 F.3d 539, 543 (7th Cir. 2015) (citing *G.G. v. Grindle*, 665 F.3d 795, 798 (7th Cir. 2011)). The required "rational connection" between the evidence and the award does not imply mathematical exactitude, especially where the compensatory damages are for pain and suffering. "Such damages are very difficult to quantify, leaving it to the [trier of fact] to select a dollar amount that it believes will fairly compensate the plaintiff." *Hendrickson*, 589 F.3d at 892-93 (citing *Fenolio v. Smith*, 802 F.2d 256, 259–60 (7th Cir. 1986)).

In *Hagge v. Bauer*, 827 F.2d 101, 109–10 (7th Cir. 1987), the appeals court affirmed $75,000 in compensatory damages for a broken leg caused by a police officer assault. The court also affirmed a $75,000 compensatory damages award in *Hendrickson* where the plaintiff had been verbally harassed, thrown against a wall, slammed to a concrete floor, and had the assailant police officer's knees pressed into his back, exacerbating previous back and neck problems. 589 F.3d at 890. In *Taliferro v. Augle*, 757 F.2d 157 (7th Cir. 1985), police officers stopped Taliferro, handcuffed him roughly and beat him, inflicting serious injuries, including breaking his dental plate and knocking out many of his real teeth. On appeal, the court reduced the jury's compensatory award of $47,000.00 to $25,000.00, observing "[w]e consider $25,000 the highest compensatory damages that can be justified on this record." *Id*.

Recently in this Court, an Indiana inmate who was spitting at officers and then pulled to the ground, "blindsided" and struck by the defendant officer, punched in the mouth, placed in a chokehold, and knocked unconscious, suffering a loss of teeth and injuries to his head, face, lip,

5

knee, was awarded compensatory damages of $35,000. *Davis v. Thrasher*, No. 1:15-cv-01206-TWP-TAB (S.D. Ind. March 21, 2021).

Here, Mr. Love did not suffer broken bones, lost teeth, lacerations requiring stitches, or even immediate medical treatment. For the injuries to Mr. Love's jaw, the abrasions to his face, the brief loss of consciousness, being slammed down onto the bed, and for pain and suffering in the days following the battery, the Court awards Mr. Love $10,000 in compensatory damages.

For Mr. Love's loss of prison employment, the Court awards $25 in compensatory damages.

To determine compensatory damages for the fifteen days spent in restrictive housing, the Court takes note of other compensatory damage awards for unconstitutional stays in prison housing imposing atypical and harsh conditions on the inmate. Such conditions include the deprivation of society, deprivation of meaningful human contact and ease of communication, the loss of freedom of movement, loss of commissary privileges, lack of access to the law library, vocational programs, job assignments, and diminished quality of life. *See Aref v. Lynch*, 833 F.3d 242, 264-65 (D.C. Cir. 2016) ("We therefore conclude there exists a universe of injuries that are neither mental nor emotional and for which plaintiffs can recover compensatory damages under the [Prison Litigation Reform Act, 42 U.S.C. § 1997e].") (listing cases).

In *Isby-Isreal v. Wynn*, No. 2:12-cv-00116-JMS-MJD (S.D. Ind. Dec. 19, 2018), this Court surveyed other decisions setting a per-day compensatory damage rate for segregated housing violations. *Id.* at 32-33. This Court considered *Smith v. Rowe*, 761 F.2d 360, 368 (7th Cir. 1985) (affirming $119 per day of segregation); *Campbell v. Peters*, 1999 WL 1313698 (N.D. Ill. Sept. 30, 1999) ($140 per day of unjustified confinement), rev'd on qualified immunity grounds, 256 F.3d 695 (7th Cir. 2001); *McClary v. Kelly*, 237 F.3d 185 (2d. Cir. 2001) (affirming district court's

award of $125 per day to prisoner held for extensive period in administrative segregation without periodic review); *Trobaugh v. Hall*, 176 F.3d 1087 (8th Cir. 1999) (reversing $1.00 award with directions to district court to award compensatory damages in the vicinity of $100 per day for days unlawfully spent in administrative segregation and citing cases awarding between $25 and $129 per day). Considering these authorities, the Court found that $100 per day was an appropriate rate per day to award Isby-Isreal. *Isby-Isreal*, dkt. 274 at 32.

Here, too, the Court finds that a reasonable per day damages rate is $100. For Mr. Love's fifteen days in restrictive housing, the Court awards compensatory damages of $1,500.

Mr. Love also seeks punitive damages. Punitive damages may be awarded in a 42 U.S.C. § 1983 case "'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Alexander v. City of Milwaukee*, 474 F.3d 437, 453 (7th Cir. 2007) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). The Court finds that the video evidence, the investigation reports from the Pendleton Correctional Facility, and Mr. Love's testimony show that Sgt. Prestel's conduct demonstrated a "reckless or callous indifference to the federally protected rights" of Mr. Love.

In his testimony, Mr. Love was not able to articulate a specific amount of punitive damages he thought reasonable. The purpose of punitive damages is to punish and deter future conduct. *See Hendrickson v. Cooper*, 589 F.3d 887, 894 (7th Cir. 2009); *see also* Federal Civil Jury Instructions of the Seventh Circuit; Constitutional Torts, 42 U.S.C. § 1983, Jury Instruction 7.28 (2017) ("The purposes of punitive damages are to punish a defendant for his or her conduct and to serve as an example or warning to Defendant ***and others*** not to engage in similar conduct in the future.") (emphasis added). Taking these factors into consideration, noting that Sgt. Prestel was terminated from his position and is no longer employed by the Department of Correction, and noting that

7

although Mr. Love suffered completely unwarranted injuries, that his injuries are not as severe as broken bones or broken teeth, the Court awards Mr. Love $10,000 in punitive damages against Sgt. Prestel.

In conclusion, the Court has found that Mr. Love has proven personal injury by a preponderance of the evidence. Compensatory damages in the total amount of $11,525 are awarded. Punitive damages of $10,000 are awarded, for a total damage award of $21,525. Costs, if any, are also awarded.

Final judgment consistent with this Order shall now enter.

**IT IS SO ORDERED**.

Date: 5/30/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Tony Lionel Love
127260
New Castle Correctional Facility - Inmate Mail/Parcels
1000 Van Nuys Road
New Castle, IN 47362

Mathew Prestel
4147 Hickory Trail
Indianapolis, IN 46203